IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| RAMON GRAY, | ) | CASE NO. 1:11 CV 1056 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| TERRY A. TIBBALS, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -2-

Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -3-
    A.    Underlying facts, conviction, and sentence . . . . . . . . . . . . . . . . . . . . . .   -3-
    B.    Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -5-
          1.    The court of appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -5-
          2.    The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . .   -7-
    C.    Postconviction petition  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -9-
    D.    Federal habeas petition  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -10-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -11-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -11-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -12-
          1.    Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -12-
          2.    AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -14-
    C.    Application of standards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -18-
          1.    Grounds one, two, four, five and eight are procedurally defaulted and
               so should be dismissed.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -18-
          2.    Ground nine should be dismissed because it is a non-cognizable,
               conclusory allegation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -23-
          3.    Grounds three, six, and seven should be denied after AEDPA review
               because the state court decision rejecting these claims was not an
               unreasonable application of clearly established federal law. . . .   -25-
               a.    Ground three – "insufficiency of [the] evidence as translated for
                      habeas from manifest weight of [the] evidence as presented to
                      the state courts in Ohio" – should be denied on the merits after
                      AEDPA review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -25-

b.      Ground six – that Gray was deprived of due process and a fair trial when the trial court permitted a display of heightened security measures in front of the jury – should be denied after AEDPA review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -28-

c.      Ground seven – that Gray's due process rights were violated when the trial court denied Gray's request for an expert to explain the problems inherent in eyewitness identifications – should be denied after AEDPA review.  . . . . . . . . . . . . .   -30-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -32-

## Introduction

Before me[1] is the petition of Ramon Gray for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Gray was convicted by a Cuyahoga County Court of Common Pleas jury in 2008 of two counts of aggravated murder, each with a capital offense and firearm specification, and one count of having a weapon under a disability,[3] and is serving a life sentence without parole. He is currently incarcerated at the Mansfield Correctional Institution in Mansfield, Ohio.

Gray raises nine grounds for habeas relief.[4] The State has filed a return of the writ arguing that the petition should be dismissed.[5] Gray has not filed a traverse.

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Donald C. Nugent by non-document order dated September 15, 2011.

[2] ECF # 1.

[3] ECF # 12 at 1.

[4] ECF # 1.

[5] ECF # 12.

For the reasons that follow, I will recommend Gray's petition be dismissed in part and denied in part.

## Facts

### A.    Underlying facts, conviction, and sentence

In the early morning hours of January 11, 2007, witnesses saw Gray along with his brother, Rufus Gray, engaged in a fight with Andre Parker and Willie DeLoach in the parking lot of a Cleveland bar.[6] A witness testified that after Parker and DeLoach attempted to drive away, Ramon Gray opened the rear passenger door of that car, and with one hand on the top of the car, aimed a gun into the car firing two shots.[7] Moments later a late model, gray Oldsmobile left the parking lot with two men inside. The car had a partial license plate number of 4448.[8]

One man was found dead in his car with another lying mortally wounded in the parking lot.[9] The coroner determined both men had been shot with the same weapon.[10]

----

[6] ECF # 12, Attachment at 97.

[7] *Id.*, at 97-98.

[8] *Id.*, at 98.

[9] *Id.*

[10] *Id.*

Later that morning, Gray was treated for a laceration above his right eye at an emergency room and was seen leaving in a car with license plates matching the description of the witness to the shooting.[11]

The Cuyahoga County Coroner's office subsequently identified DNA from a white skull cap found at the scene as matching Rufus Gray's DNA profile.[12] His DNA was also found on both victims.[13] Police arrested him in September 2007, and shortly thereafter, the witness identified Rufus Gray from a photo array as the passenger he had seen in the gray Oldsmobile driving away immediately after the shooting.[14]

Ramon Gray was arrested in 2008, and was later identified in a line-up as the shooter.[15]Subsequent to the arrest, police determined that three fingerprints taken from the rear passenger side of the car where the victim was found matched Ramon Gray's prints.[16]

At a jury trial, Ramon Gray was convicted of two counts of aggravated murder, each with a capital offense and firearm specification, and one count of having a weapon while under a disability, as indicted, and recommended life in prison without parole.[17] On

---

[11] *Id.*

[12] *Id.*, at 99.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

September 26, 2008, the court sentenced Gray to life in prison without the possibility of parole for the two counts of aggravated murder, such sentence to be served consecutively to a merged three-year term on the firearm specifications, and a consecutive five-year term on the conviction for having a weapon while under disability.[18]

## B.    Direct appeal

### 1.    *The court of appeals*

On October 23, 2008, Gray, through counsel, timely[19] appealed his conviction and sentence.[20] In the supporting brief, Gray raised the following nine assignments of error:

1.    The Appellant was denied due process and equal protection of law pursuant to the constitutions of the State of Ohio and the Unites States when his case was improperly assigned to a visiting judge.

2.    Inaccurate penalty phase instructions that misguide the jury as to their duties under the law regarding consideration of sentencing options violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3.    The verdict and judgment below are against the manifest weight of the evidence.

4.    The lower court erred and denied the appellant a fair trial when it allowed the jury to consider a non-existent "mass murder" specification.

---

[18] *Id.*, at 5.

[19] As noted, the sentence was journalized on September 26, and the notice of appeal was filed October 23 – or 27 days later. Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within thirty days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007).

[20] ECF # 12, Attachment at 6-7.

5.      The judgment and sentence finding Appellant guilty of the "mass murder" specification pursuant to R.C. 2929.04(A)(5) must be vacated as the jury never found that the two killings were part of a course of conduct.

6.      The lower court erred and denied Appellant due process of law and a fair trial when it permitted a display of heightened security measures in front of the jury when Appellant gave his unsworn statement.

7.      Appellant was denied his Fifth Amendment right to due process of law by virtue of the denial of his request for appointment of an expert witness on eyewitness identification.

8.      The lower court erred and denied Appellant a fair trial when it permitted the State to introduce prejudicial 'other acts' evidence during the sentencing phase.

9.      Appellant was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.[21]

The State file a brief in response,[22] to which Gray replied.[23] But prior to addressing the merits of the appeal, the Ohio court *sua sponte* remanded the case back to the trial court for various corrections in the sentencing entry.[24] Accordingly, the trial court entered a revised sentencing order that contained the same prison terms as before.[25] On February 8, 2010, the

---

[21] *Id.*, at 12.

[22] *Id.*, at 59-86.

[23] *Id.*, at 87-92.

[24] *Id.*, at 93.

[25] *Id.*, at 94.

appeals court found all of Gray's assignments of error to be without merit, affirming the conviction and sentence.[26]

## 2.    The Supreme Court of Ohio

On February 26, 2010, Gray, *pro se*, then timely[27] filed a notice of appeal with the Supreme Court of Ohio.[28] In his memorandum in support of jurisdiction, Gray raised the following nine propositions of law:

1.    The Eighth District Court of Appeals erred by not remanding Appellant's case for failure of the Trial Court to issue proper Journal Entry authorizing the Assignment of the Visiting Judge to preside over his trial.[29]

2.    The Eighth District [sic] of Appeals erred by not remanding Appellant's case for failure of the Trial Court to issue proper penalty phase instructions that misguided the jury as to their duties under the law regarding consideration of sentencing options which violated Appellant's Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[30]

3.    The jury verdicts in Appellant's case were against the Manifest Weight of Evidence.[31]

---

[26] *Id.*, at 95-119.

[27] As noted, the appellate court filed its decision on February 8, and Gray filed an appeal from that decision on February 26. To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought. *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010).

[28] ECF # 12, Attachment at 120-21.

[29] *Id.*, at 127.

[30] *Id.*, at 130.

[31] *Id.*, at 132.

-7-

4.    Appellant was deprived his Constitutional Rights to a Fair Trial and Due Process of Law when the Trial Court allowed the jury to consider a non-existent "mass murder" specification.[32]

5.    Appellant was denied Due Process of Law and a Fair Trial against his Constitutional Rights under the Ohio and United States Constitution when the Trial Court allowed a judgment and sentence of a "mass murder" specification pursuant to Ohio Revised Code 2929.04(A)(5) where the jury never found that the two killings were part of a course of conduct.[33]

6.    Appellant was denied Due Process of Law and a Fair Trial when the Trial Court erred in permitting a display of heightened security measures in front of the jury when Appellant gave his unsworn statement.[34]

7.    Appellant was denied his Fifth Amendment Right to Due Process of Law by virtue of the denial of his Request for Appointment of an Expert Witness on Eyewitness Identification.[35]

8.    Appellant was denied a Fair Trial when the Trial Court erred by permitting the State to introduce prejudicial 'Other Acts' Evidences during the sentencing phase of his trial.[36]

9.    Appellant claims he suffered from Ineffective Assistance of Counsel against his Sixth and Fourteenth Amendment Rights to the United States Constitution when Trial Counsel's performance fell below any reasonable standard and he was substantially prejudiced thereby said deficient performance.[37]

---

[32] *Id.*, at 133.

[33] *Id.*, at 134.

[34] *Id.*, at 135.

[35] *Id.*, at 136.

[36] *Id.*

[37] *Id.*

The State did not file a brief in response. On May 26, 2010, the Supreme Court of Ohio denied leave to appeal, dismissing Gray's appeal as not involving any substantial constitutional question.[38]

## C.  Postconviction petition

While the direct appeal was pending, Gray, through counsel, on July 29, 2009, filed a petition for postconviction relief raising three claims:

1.  Improper assignment of the presiding judge deprived the court of jurisdiction, and ineffective assistance of counsel in not objecting to the assignment;[39]

2.  Denial of equal protection and due process in not granting defense motion for an expert witness in identification;[40] and

3.  Faulty indictment and jury instructions in using the term "mass murder" and ineffective assistance of trial counsel in not objecting to the use of that term.[41]

The State filed a brief in opposition, noting, *inter alia*, that all of Gray's postconviction claims arise on the record, and so are identical to issues previously raised on the direct appeal.[42] Thus, the State argued, the entire postconviction petition should be

---

[38] *Id.*, at 164.

[39] *Id.*, at 166-68.

[40] *Id.*, at 169-71.

[41] *Id.*, at 172-73.

[42] *Id.*, at 175.

dismissed on the basis of *res judicata*.[43] As of August, 2013, the State advises that the

postconviction petition has not been adjudicated in the state trial court.[44]

## D.    Federal habeas petition

On May 24, 2011, Gray, *pro se*, timely filed[45] a petition for federal habeas relief

raising nine grounds:

> GROUND ONE: The Appeals Court erred by not remanding Appellant's case for failure of the Trial Court to issue Journal Entry authorizing the Assignment of the Visiting Judge to preside over his trial.
>
> GROUND TWO:  The Appeals Court erred by not remanding Appellant's case for failure of the Trial Court to issue proper penalty phase instructions.
>
> GROUND THREE: Insufficiency of Evidence as translated for Habeas from Manifest Weight of Evidence as presented to the State Courts in Ohio.
>
> GROUND FOUR:  Deprivation of Constitutional Right to a Fair Trial and Due Process of Law when the Trial Court permitted the jury to consider a non-existent "mass murder" specification.
>
> GROUND FIVE:  Deprivation of Constitutional Right to a Fair Trial and Due Process of Law when the Trial Court allowed a judgment and sentence of a "mass murder" specification, where the jury never found that the two killings were part of a course of conduct.
>
> GROUND SIX:  Deprivation of Due Process of Law and Fair Trial when the Trial Court erred in permitting a display of heightened security measures in front of the jury.

---

[43] *Id.*

[44] ECF # 16.

[45] As noted, the decision of the Supreme Court of Ohio dismissing the direct appeal was entered on May 26, 2010. The present petition was filed less than one year later and so is timely.

GROUND SEVEN: Trial Court violated Appellant's Fifth Amendment Right to Due Process of law by virtue of denying his Right to Appointment of Expert Witness on Eyewitness Identification.

GROUND EIGHT: Appellant was denied a Fair Trial when the Trial Court erred by permitting the State to introduce prejudicial 'Other Acts Evidence' during the sentencing phase of his trial.

GROUND NINE: Ineffective Assistance of Counsel.[46]

The State, in its return of the writ, essentially asserts that grounds one through five, plus ground eight, are procedurally defaulted, while the remaining grounds are non-cognizable or without merit after AEDPA review.[47] Gray did not file a traverse.

## Analysis

### A.    Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Gray is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[48]

2.    There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[49]

---

[46] ECF # 1.

[47] ECF # 12.

[48] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[49] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

3.     In addition, Gray states,[50] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[51]

4.     Moreover, subject to the fair presentment arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[52]

5.     Finally, because Gray is represented by counsel, he has not requested the appointment of counsel,[53] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[54]

**B.**    **Standards of review**

*1.*    *Procedural default*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its merits in state court, either because the petitioner failed to raise it when state remedies were still available or because of some other violation of a state procedural rule.[55]

---

[50] *See*, ECF # 1 at 5.

[51] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (2006).

[52] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[53] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[54] 28 U.S.C. § 2254(e)(2).

[55] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

-12-

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[56]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[57]

If a procedural default is established, the default may be overcome if: (1) the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits will result in a fundamental miscarriage of justice.[58] In addition, procedural default may also be excused by a showing of actual innocence.[59]

---

[56] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[57] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[58] *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004) (citations omitted).

[59] *Id.*

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[60] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[61] There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[62]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[63] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[64]

## 2.    *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly

---

[60] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[61] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[62] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[63] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[64] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[65]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[66] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[67] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[68]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[65] 28 U.S.C. § 2254(d).

[66] *Williams v. Taylor*, 529 U.S. 362 (2000).

[67] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[68] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

-15-

erroneously or incorrectly."[69] Rather, the state court holding may be disturbed only upon

showing that it was "objectively unreasonable."[70]

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult

to meet,"[71] and "highly deferential" to the decision of the state court.[72] As the Supreme Court

explained, "[a] state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision."[73] Or, stated differently, a writ will issue only upon a showing that the state court's

ruling "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."[74]

In addition, a state court may be found to have unreasonably applied clearly

established federal law if it unreasonably extends or unreasonably fails to extend a clearly

established federal legal principle to a new context.[75]

---

[69] *Williams*, 529 U.S. at 411.

[70] *Id.* at 409.

[71] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[72] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[73] *Harrington*, 131 S. Ct. at 786.

[74] *Id.* at 786-87.

[75] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

-16-

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[76] Then, the federal court is to review the claim *de novo*.[77]

As the Supreme Court emphasized in *Harrington v. Richter*, since a state court is not required to state its reasons or explain its conclusion when it adjudicates a federal claim in the merits, when a federal claim was presented to the state court and then denied without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[78] In such circumstances, the decision of the state court would be entitled to deference from the federal habeas court.[79]

---

[76] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[77] *Id.*

[78] *Harrington*, 131 S. Ct. at 784-85; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[79] *Brown*, 656 F.3d at 329.

**C.     Application of standards**

1.     *Grounds one, two, four, five and eight[80] are procedurally defaulted and so should
       be dismissed.*

Initially, as the State points out, although Gray raised ground one (alleged error in

assigning a visiting judge), ground two (alleged error in jury instructions), ground four

(alleged defect in the indictment), and ground five (purported lack of necessary factfinding

before imposing the death penalty) before the Ohio courts on direct appeal, the Ohio appeals

court declined to reach the merits of those claims and deemed them waived because Gray had

failed to make a contemporaneous objection regarding any of those issues.[81]

Ohio's contemporaneous objection rule has been long-recognized as an independent

state-law procedural rule that will support a finding of procedural default.[82] As the Ohio

appeals court noted as to each defaulted claim,[83] failure to make a contemporaneous objection

to any potential error will result in that error being waived for later review, with any

appellate examination thus being confined to "plain error" analysis.[84] In such cases, as the

---

[80] The State also claims ground three is procedurally defaulted. ECF # 12 at 12. As
will be discussed later, while that argument is strong, the better course in the case of a *pro se*
petitioner such as Gray is to treat the claim on the merits. Even if procedurally defaulted,
such a default may be overlooked when, as here, the claim can be denied on the merits. *See*,
*Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Consequently, ground three will be
addressed on the merits in a subsequent section of this report and recommendation.

[81] *Id.* at 10-11.

[82] *Osborne v. Ohio*, 495 U.S. 103, 124 (1990).

[83] ECF # 12, Attachment (appellate opinion) at 100 (current ground one), 102 (ground
two), 108-09 (ground four), 110 (ground five).

[84] *State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932, 951 (1998).

Sixth Circuit teaches, if the state court has been limited to plain error review because of a petitioner's failure to raise a claim in accordance with the state procedural rules, the state procedural bar undergirding a procedural default has been established, and the petitioner must show cause and prejudice in order to obtain consideration of the claim on its merits by the federal court.[85]

Here, in each of these four enumerated claims, the state appeals court recognized and invoked the procedural bar created by Gray's failure to make a contemporary objection at trial to the purported error.[86] As such, the Ohio court proceeded to review the claims only for plain error. Gray, for his part, has not offered any cause for these procedural defaults, nor any prejudice from this court's failure to consider the merits of these claims.

Thus, grounds one, two, four, and five should be dismissed as procedurally defaulted because Gray waived them by not making contemporaneous objections at trial.

In regards to the claimed procedural default of ground eight (introduction of other acts evidence), the State maintains that this ground is procedurally defaulted for lack of fair

---

[85] *Lundgren*, 440 F.3d at 765.

[86] The invocation of the contemporaneous objection rule and the subsequent use of plain error analysis as to current ground four is not as explicit as it was with the other three grounds. Rather, it can be inferred by the appeals court citing to the lack of a contemporaneous objection and then, without identifying the analysis employed, producing a result that found "no prejudicial error" in the use of the term "mass murder." ECF # 12, Attachment at 109. In Ohio law, "plain error" is defined as an "obvious and prejudicial error." *See*, *Hinkle v. Cleveland Clinic Foundation*, 159 Ohio App. 3d 351, 372, 823 N.E.2d 945, 960 (Ohio Ct. App. 2004) (citation omitted). Thus, it is clear that the appeals court here subjected this claim to plain error analysis without directly using the term.

presentment to the Ohio courts as a federal constitutional issue.[87] Specifically, the State notes that this claim was raised to the Ohio courts exclusively as a state evidentiary issue, without any citation to federal case law or analysis. Although the State concedes that Gray did introduce this claim to the Ohio appeals court with a sentence including the phrase "denied him Due Process of Law and a fair trial,"[88] the State asserts that this single use of two generic, catch-all phrases is insufficient to "constitutionalize" an otherwise non-cognizable state law claim.[89]

Here, a review of Gray's appellate brief establishes that this claim was presented to the Ohio courts exclusively as a state law evidentiary issue. Gray argued that the prosecution was improperly permitted to introduce evidence that Gray had a pending, unresolved gun charge in its attempt to rebut testimony during the penalty phase from Gray's mother as to his "good and worthwhile attributes."[90] Gray contended to the appeals court that the trial court's admission of this other acts evidence violated Rule 404(B) of the Ohio Rules of Evidence, as that rule has been construed by the Supreme Court of Ohio.[91] Essentially, Gray maintained that because the evidence of a pending gun charge was not relevant to the offense

---

[87] ECF # 12 at 12-14.

[88] *Id.* at 14 (citing record).

[89] *Id.*

[90] ECF # 12, Attachment at 38.

[91] *Id.* at 39-42.

at issue in the trial, did not directly impeach the credibility of his mother's testimony, and was highly prejudicial, it should not have been permitted under Rule 404(B).[92]

Analyzing the State's position here requires consideration of whether Gray fairly presented his claim to the state courts as a constitutional claim and so avoided defaulting that claim.

Initially, to the extent a petitioner's argument is based only upon an issue of state law, the petitioner does not usually state a cognizable claim for federal habeas relief.[93] While a very narrow category of cognizable federal claims may be asserted that are based on an assertion that a state evidentiary ruling denied the petitioner a fundamentally fair trial,[94] those claims, to escape procedural default, must themselves be fairly presented to the state courts as federal constitutional claims.[95] This "fair presentment" requirement is, in turn, rooted in mandate that state courts be given a full and fair opportunity to resolve any constitutional claim before the petitioner seeks relief in the federal court.[96]

In that regard, the Sixth Circuit has identified four actions a petitioner can take so as to fairly present both the factual and legal bases of his federal constitutional claim to the state courts:

---

[92] *Id.* at 41-42.

[93] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[94] *Estelle v. McGuire*, 502 U.S.62, 67-68 (1991).

[95] *See*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

[96] *Boerckel*, 526 U.S. at 842.

(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.[97]

General allegations of the denial of a "fair trial" or "due process" are not sufficient to fairly present a federal constitutional claim to the state court.[98] As the Sixth Circuit teaches, "[t]o escape procedural default, [federal constitutional claims] must themselves be fairly presented, rather than functioning as catch-all language within the presentation of other non-constitutional arguments."[99] Thus, a claim is not fairly presented when, as here, there are mere references in the headings of the petitioner's brief to the denial of a fair trial and due process, while the entirety of the brief itself is a state-law argument on the admission of evidence.[100]

As noted above, a review of both Gray's appellate brief and his brief to the Supreme Court of Ohio on this issue shows the claim is entirely argued as a purported violation of state evidentiary law.  Also, as with the preceding procedurally defaulted grounds, I note that Gray has offered no basis on which to excuse the default for cause. Accordingly, this ground for relief should be dismissed as procedurally defaulted for the reasons given above.

---

[97] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000).

[98] *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

[99] *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004).

[100] *Id.*

-22-

In sum, as more fully detailed above, I recommend dismissing grounds one, two, four, five, and eight of this petition as procedurally defaulted.

**2.      *Ground nine should be dismissed because it is a non-cognizable, conclusory allegation.***

In his ninth ground for relief, Gray seeks to raise an ineffective assistance of counsel argument. But as the State observes, Gray does not specify whether the counsel involved was his trial or appellate counsel, and further does not specify any particular action that he contends was ineffective.[101] Thus, without the basic details of a claim, the State maintains that this mere "conclusory" allegation of ineffective assistance should be dismissed.[102]

The federal habeas court in *Keeling v. Shannon*,[103] when faced with a similar unspecified ineffective assistance of counsel claim and a similar motion to dismiss from the State, held as follows:

---

[101] ECF # 12 at 14-15. Notwithstanding the State's argument, a review of Gray's appellate brief and brief to the Supreme Court of Ohio shows that the claim before both of those courts involved instances of purported ineffective assistance of trial counsel. *See*, ECF # 12, Attachment at 42-43 (appeals court brief), 136-38 (brief to Supreme Court of Ohio). That said, however, having this Court decide, with no indication from the words of the petition itself, which of the several state court ineffective assistance claims Gray meant to advance here, improperly proceeds beyond mere lenient construction of a *pro se* pleading, which is required, to functioning as the petitioner's advocate, which is not allowed.

[102] ECF # 12 at 15.

[103] *Keeling v. Shannon*, No. Civ.A. 02-4626, 2003 WL 22158814 (E.D. Pa. Aug. 20, 2003).

A federal district court should dismiss habeas corpus claims that are based on vague and conclusory allegations. When claiming that counsel was ineffective, a habeas petitioner must allege facts to identify precisely how his counsel failed to fulfill his or her obligations. Absent such specifics, the court should summarily dismiss the claim. *See*, *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir.1993) (habeas corpus petitioner's vague ineffective assistance of counsel claim stating that he was denied right to allocution at sentencing as well as right to representation of counsel was insufficient to raise Sixth Amendment claim); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991) (Petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense, Rather, he must set forth facts to support his contention."); *Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir.) (petitioner's vague and general allegations fail to make sufficient showing to justify habeas corpus relief), *cert. denied*, 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 362 (1987); *Spillers v. Lockhart*, 802 F.2d 1007, 1010 (8th Cir.1986) (habeas petitioner's claims he was denied effective assistance of counsel at appellate stage because counsel failed to demonstrate on appeal customary skills and diligence of competent attorney, raise issues of merit to state supreme court, and properly prepare habeas petition, were vague and conclusory, and properly dismissed summarily by district court.).[104]

Here, Gray's "claim" is purely perfunctory – indeed, it is no more than the mere phrase "ineffective assistance of counsel"[105] without any supporting facts provided as is required by Rule 2(c)(2) of the Rules Governing Section 2254 Cases.[106] As such, it provides

---

[104] *Id.*, at *10.

[105] ECF # 1 at 5.

[106] Rule 2(c) "The petition must: ...(2) state the facts supporting each ground."

even less development of the claim than was the situation in *Keeling*,[107] or in the cases relied on by that decision.

Accordingly, ground nine should be dismissed as a mere conclusory allegation without the assertion of any supporting facts to support meaningful review of that claim by this Court.

**3.     *Grounds three, six, and seven should be denied after AEDPA review because the state court decision rejecting these claims was not an unreasonable application of clearly established federal law.***

a.      *Ground three – "insufficiency of [the] evidence as translated for habeas from manifest weight of [the] evidence as presented to the state courts in Ohio" – should be denied on the merits after AEDPA review.*

As noted earlier, the State initially argues that this claim is procedurally defaulted because Gray never raised the federal constitutional argument of insufficiency of the evidence to the state courts but only presented this claim as arising under Ohio law and the manifest weight of the evidence.[108] The State maintains that because the manifest weight of the evidence test is distinct from the sufficiency of the evidence test, and moreover is not based on due process concerns as is sufficiency of the evidence, Gray may not here "morph"

---

[107] The petitioner in *Keeling* stated as his claim for relief that his trial and appellate counsel were ineffective for "'failure to preserve these claims on Direct Appeal.'" *Keeling*, 2003 WL 22158814, at * 10 (quoting petition). The district court in dismissing this claim as conclusory found that Keeling had not explained what counsel had failed to do nor identified with particularity what claims counsel allegedly failed to preserve.

[108] ECF # 112 at 12, 23-24.

his state law manifest weight of the evidence claim into a federal sufficiency of the evidence ground for relief.[109]

It is certainly true that manifest weight of the evidence claims, of themselves, do not state a cognizable ground for federal habeas relief.[110] But the Sixth Circuit in *Nash v. Eberlin*[111] teaches that when *pro se* habeas litigants state a manifest weight of the evidence claim to Ohio courts, the rule requiring lenient construction of such pleadings should be applied to such claims by treating them as sufficiency of the evidence claims.[112] *Nash* so reasoned because in Ohio law a finding that a conviction is supported by the manifest weight of the evidence necessarily means that it is also supported by sufficient evidence.[113]  In light of *Nash*'s reasoning that *pro se* arguments of manifest weight should be analyzed as sufficiency of the evidence claims, ground three should not be dismissed as procedurally defaulted but addressed on the merits.

In that regard, the Ohio appeals court, in adjudicating Gray's manifest weight of the evidence claim, found as follows:

> The evidence at trial established that Eddie, an eyewitness to the murders, picked Ramon out of a lineup. Further, Eddie's testimony that he saw Ramon standing by the rear passenger door with one hand on top of the vehicle

---

[109] *Id.* at 23-24.

[110] *See*, *Johnson v. Hanover*, 534 F.2d 1232, 1234 (6th Cir. 1976).

[111] *Nash v. Eberlin*, No. 06-4059, 2007 WL 4438008, at *3 n.4, 258 F. App'x 761 (unpublished opinion) (6th Cir. Dec. 14, 2007).

[112] *Id.*

[113] *Id.*

aiming a gun at his brother was corroborated by the forensic evidence: fingerprints lifted from above the rear passenger door of the car where Andre Parker was found were an identical match with Ramon. And Eddie's statement to the police immediately after the shootings that Ramon and another passenger, later identified as Rufus Gray, left the scene in a gray Oldsmobile, with a license plate bearing the digits 4448, was confirmed by Officer Lawrence's testimony that according to BMV records, at the time of the incident, Ramon Gray was the owner of a 1990 Oldsmobile Trofeo, license plate number EBG 4448.

Rufus's presence at the scene that night was confirmed by the presence of his DNA, which was found on both the white skull cap left in the parking lot and on both victims. And Rufus's mother testified that she saw him in a hospital emergency room early the same morning as he was treated for an injury above his eye. She testified further that Ramon and Rufus left the hospital together, in Ramon's car, which she identified as an Oldsmobile.[114]

This combination of eyewitness testimony and physical evidence cited by the appeals court,[115] when viewed in the light most favorable to the prosecution, is sufficient, under the standard set forth in *Jackson*, for the jury to find Gray guilty of the aggravated murder of Willie DeLoach and Andre Parker. Moreover, the evidence cited above indicating Gray murdered DeLoach and Parker while using a firearm, when viewed in combination with the undisputed evidence that Gray could not lawfully possess a firearm by reason of his 2004 conviction for drug possession,[116] is also sufficient evidence under *Jackson* to support Gray's conviction for having a weapon while under disability.

---

[114] ECF # 12, Attachment at 106-07.

[115] An even more complete rendering of the facts found by the Ohio appeals court appears earlier in this report and recommendation.

[116] *See*, ECF # 12, Attachment at 003.

-27-

Ground three should be denied after AEDPA review because the decision of the state appeals court was not contrary to the clearly established federal law of *Jackson*.

b.    *Ground six – that Gray was deprived of due process and a fair trial when the trial court permitted a display of heightened security measures in front of the jury – should be denied after AEDPA review.*

In his argument to the state appeals court Gray contended that having a deputy sheriff escort him from the defense table to the witness stand to make his unsworn statement to the jury during the penalty phase prejudiced him because it portrayed him to the jury as so dangerous that an armed deputy had to be near him at all times.[117]

The Ohio court, in addressing this claim, began by noting the clearly established federal law of *Holbrook v. Flynn*.[118] There, the Supreme Court held that the conspicuous and noticeable presence of courtroom security is not inherently prejudicial.[119] Even though every accused person is entitled to have his guilt or innocence determined solely on the basis of the evidence produced at trial, the Court stated this "does not mean that every practice tending to single out the accused from everyone else in the courtroom must be struck down."[120] Rather, any courtroom security practice must be viewed on a case-by-case basis to determine what, if any, prejudice to the accused was created.[121]

---

[117] *See*, *id.* at 112.

[118] *Holbrook v. Flynn*, 475 U.S. 560 (1986).

[119] *Id.* at 568-69.

[120] *Id.* at 567.

[121] *Id.*

-28-

Here, the appeals court found that a single security officer standing near Gray as he gave his statement did not produce any recorded reaction from the jury, and, in the judgment of the reviewing court, there is no basis for concluding that this measure influenced the jury in any way.[122] Thus, the state court determined that in the absence of any noticeable showing of prejudice, the trial court did not violate *Flynn* in permitting this security measure to be taken.[123]

*Flynn* itself distinguished the mere presence of identifiable security officers within the courtroom from things like shackling a prisoner or compelling the accused to appear in prison clothing. *Flynn* observed that while shackles and prison clothes are "unmistakable indications of the need to separate a defendant from the community at large," the presence of guards in the courtroom carry no such inherent and unmistakable meaning.[124] Rather, *Flynn* reasoned, jurors, like the rest of society, have "become inured to the presence of armed guards in most public places," so that jurors will likely take the presence of armed security in the courtroom for granted, and not as a sign that the individual defendant is particularly dangerous or culpable, "so long as their numbers or weaponry do not suggest particular official concern or alarm."[125]

---

[122] ECF # 12, Attachment at 113.

[123] *Id.*, citing *Flynn*, 475 U.S. at 572.

[124] *Flynn*, 475 U.S. at 569.

[125] *Id.* (citation omitted).

Upon AEDPA review of this state court decision, it was not an unreasonable application of the clearly established federal law of *Flynn*. As reasoned by the appeals court, having a single security officer escort Gray to the witness box and then stand nearby during his statement, does not – without more – move this display of courtroom security from something the jury likely took for granted to an impermissible display of any "particular official concern or alarm" regarding Gray. Therefore, ground six should be denied.

c.   *Ground seven – that Gray's due process rights were violated when the trial court denied Gray's request for an expert to explain the problems inherent in eyewitness identifications – should be denied after AEDPA review.*

Gray asserted on appeal that because Eddie Parker's eyewitness identification of Gray was "central" to the prosecution, it was necessary that an expert explain to the jury how stressful events, like a shooting, can influence such eyewitness testimony.[126]

The Ohio court began its analysis by noting the United States Supreme Court's holding in *Ake v. Oklahoma*[127] that the state must provide an indigent defendant with access to the raw material necessary for an effective defense.[128] In Ohio, and as it concerns the retention of an expert witness, the appeals court further observed that such a decision is committed to the discretion of the trial court.[129] In that regard, the appellate opinion noted that the state is required to provide an indigent defendant with funds to obtain an expert only

---

[126] ECF # 12, Attachment at 113.

[127] *Ake v. Oklahoma*, 470 U.S. 68 (1985).

[128] *Id.* at 77.

[129] ECF # 12, Attachment at 113 (citation omitted).

when the defendant has shown that (1) there is a reasonable probability that the expert would aid in the defense, and (2) the denial of the expert would result in an unfair trial.[130] In the absence of such a showing of particularized need, Ohio holds that due process does not require the state to provide the funds for an expert.[131]

Pursuant to this authority, and on this record, the state appeals court found that Gray had not made such a showing of particular need for an expert on eyewitness testimony. Specifically, the appeals court noted that there was "overwhelming physical and other evidence that corroborated Eddie Parker's eyewitness testimony"[132] and otherwise tied Gray to the crime.[133] Thus, the court determined, the jury was "able to evaluate the veracity of Eddie [Parker's] eyewitness testimony without the assistance of an eyewitness identification expert," and the denial of Gray's request did not result in an unfair trial.[134]

In reviewing this decision in light of the AEDPA standard, the state court identified the clearly established federal law of *Ake*, as that principle is applied to motions for trial experts by Ohio courts. The court then reviewed the denial of Gray's motion in light of the factors set forth in Ohio law and concluded that Gray had not been denied due process by the trial court's denial of his motion requesting funds for an expert on eyewitness testimony. This

---

[130] *Id.* at 114 (citation omitted).

[131] *Id.*

[132] *Id.*

[133] *Id.* at 115.

[134] *Id.* at 115-16.

decision was not an unreasonable application of clearly established federal law, and so this ground should be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition of Ramon Gray for a writ of habeas corpus be dismissed in part and denied in part.

Dated:  August 27, 2013          s/ William H. Baughman, Jr.
                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[135]

---

[135] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).